UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RONALD WILLIAMS (#403681)            CIVIL ACTION

VERSUS

JOHN SANDERS, ET AL.            NO. 12-0475-SDD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 27, 2013.

                                                 RICHARD L. BOURGEOIS, JR.
                                                 UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RONALD WILLIAMS (#403681)                                                CIVIL ACTION

VERSUS

JOHN SANDERS, ET AL.                                                      NO. 12-0475-SDD-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment (Rec. Doc. 37).  This motion is opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Capt. John Sanders, Capt. James Morris, Sgt. Joshua Francois and Major Shelton Scales, complaining that his constitutional rights were violated on December 24, 2011, when defendants Sanders and Morris subjected him to excessive force and compelled him to take a shower in water that was too hot while defendants Francois and Scales stood by and failed to intervene to prevent the wrongdoing.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's administrative remedy proceedings, a certified copy of LSP Directive No. 09.002 (relative to "Use of Force), a certified copy of the LSP Camp J Gator Unit Chemical Agent Log for the date December 24, 2011, a certified copy of excerpts from the Disciplinary Rules and Procedures for Adult Inmates (2008 edition), a certified copy of the Camp J Air and Temperature Log for the date December 24, 2011, a certified copy of the Camp J Gator Unit Shower Roster for the date December 24, 2011, certified copies of

pertinent excerpts from the plaintiff's medical records, and the affidavits of Rhonda Z. Weldon, Barrett Boeker, Dr. Jason Collins, and defendants Joshua Francois, John Sanders and Shelton Scales.[1]

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is

---

1. In the Memorandum filed in support of their Motion for Summary Judgment, the defendants make reference to an attached "Exhibit D," which is described as an affidavit executed by defendant James Morris.  The referenced affidavit, however, is not attached to the defendants' Motion.

appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

In his Complaint, the plaintiff alleges that on December 24, 2011, he was in his cell at Camp J at LSP when the four defendants entered the cell tier. According to the plaintiff, one of them, defendant Joshua Francois, was wearing a gas mask. The four defendants allegedly arranged themselves around the outside of the plaintiff's cell, with defendants Sanders and Morris on either side of the cell and with defendants Francois and Scales standing in front. The plaintiff alleges that defendants Sanders and Morris, without provocation or justification, took cans of chemical irritant out of their pockets and sprayed the irritant into the plaintiff's cell. After several seconds elapsed, the defendants ordered the plaintiff to approach the bars of the cell to be restrained. As the plaintiff attempted to do so, however, defendants Sanders and Morris again sprayed the chemical irritant into the plaintiff's cell, with defendant Sanders spraying the irritant into the plaintiff's face and with defendant Morris, in a crouched position, spraying towards the plaintiff's groin. Finally, the plaintiff alleges that the defendants then placed him in restraints and escorted him to the shower cell at the end of the cell tier where defendants Sanders and Morris turned on the water and ordered the plaintiff to take a shower. Although the plaintiff complained that the water was too hot, defendants Sanders and Morris again ordered the plaintiff to take a shower and then sprayed him again with chemical irritant

when he refused.  According to the plaintiff, he finally complied with the defendants' demands, but the hot water caused him pain.  Finally, the plaintiff alleges that defendants Francois and Scales observed the entirety of the alleged use of force by defendants Sanders and Morris but did nothing to intervene or stop the alleged wrongful conduct.

Initially, the Court notes that it is unclear from the plaintiff's Complaint whether he has named the defendants in their individual and/or their official capacities.  However, in light of the liberality with which this Court interprets the pleadings of pro se litigants, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court interprets the plaintiff's Complaint as naming the defendants in both capacities.  Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989).  Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id.* at 25.  Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal.  In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state.  *Id.*

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the defendants assert that they are entitled to qualified immunity in connection with

the plaintiff's claims. Specifically, the defendants assert that the plaintiff will be unable to present evidence sufficient to establish that any of the defendants participated in a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398, 399 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[2]

---

2. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the *Callahan* Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court concludes that the defendants' motion should be granted in part and denied in part. Specifically, the Court finds that the plaintiff's allegations and evidentiary showing are sufficient to create a genuine issue of material fact and to thereby overcome the defendants' assertion of qualified immunity relative to his claim of alleged excessive force, but are not sufficient to overcome the defendants' assertion of qualified immunity relative to his claim of allegedly being compelled to take a shower in water that was too hot.

Addressing first the plaintiff's claim of excessive force, the law is clear that a use of force is excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Although the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force (provided that such force is not of a sort "repugnant to the conscience of mankind"), *Hudson v. McMillian*, *supra*, 503 U.S. at 10, an inmate who is subjected to gratuitous force by prison officials "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7. In addition, a defendant security officer may be found responsible for a failure to intervene and take reasonable measures

to protect an inmate from another officer's excessive use of force. The test is whether the observing officer had actual knowledge of a substantial risk of harm to the inmate yet disregarded that risk by failing to take reasonable measures to prevent the resulting harm. *See Luken v. Lynaugh,* 98 F.3d 1339, *4 (5th Cir. 1996) ("A convicted inmates failure-to-protect claim is evaluated under the Eighth Amendment's 'deliberate indifference' standard").

Applying the foregoing standard, the Court concludes that there are disputed questions of fact which preclude summary judgment in connection with the issue of excessive force. Specifically, the plaintiff asserts in a sworn statement that defendants Sanders and Morris sprayed a chemical irritant into his cell without warning or justification, sprayed him again as he attempted to comply with orders to come to the bars of his cell, and sprayed him a third time in the shower cell when he refused to comply with orders to take a shower.[3] These sworn assertions are corroborated by additional sworn statements attached to the plaintiff's memorandum and purportedly signed by co-inmates. *See* attachments to Rec. Doc. 38. According to the plaintiff, the chemical irritant caused great discomfort which required medical attention on the date of the incident and which persisted for several days thereafter.

In response to the plaintiff's assertions, the defendants have presented affidavits attesting that the plaintiff was involved in a confrontation with a co-inmate earlier on the date of the incident and that defendant Sanders, in response, approached the plaintiff's cell and ordered the

---

3. According to the plaintiff, the first and second applications of irritant spray were approximately 20 seconds in duration whereas the third application was approximately 10 seconds in duration. *See* Rec. Doc. 38 at p. 1. Although the defendants characterize the allegations of the plaintiff's Complaint as asserting that the first application of irritant spray was only 4 seconds long, *see* Rec. Doc. 37-1 at p. 5, this characterization is not justified. To the contrary, the plaintiff's Complaint is more susceptible of being interpreted as alleging that there was a *4-second interval* of time between the first and second applications, *see* Rec. Doc. 1 at p. 5 (referring to a "cessation" in spraying of "approximately 4 seconds").

plaintiff to come to the bars of his cell to be restrained.  According to the defendants, the plaintiff repeatedly refused these orders and, in response, defendant Sanders obtained a can of chemical agent and, after again ordering the plaintiff to come to the bars of the cell, sprayed a one-second burst into the plaintiff's cell in an attempt to obtain compliance.  When the plaintiff continued to refuse to comply, defendant Sanders again sprayed a one-second burst of chemical agent into the plaintiff's cell, whereupon the plaintiff complied with the defendant's directives.  According to the defendants, the plaintiff was then allowed to shower without further incident, was provided with a clean jumpsuit, and was transported to the infirmary where a physical examination revealed no signs of objective injury.  Thus, according to the defendants, defendant Sanders utilized only a minimal amount of force on the date of the incident, and this force was necessary to obtain compliance with a contentious and recalcitrant inmate.[4]

The competing assertions of the parties present issues of credibility which are not susceptible of resolution on summary judgment.  Although the defendants point to the alleged minimal nature of the plaintiff's reported injuries as justification for the grant of summary judgment, the law is clear that minimal injuries alone do not justify dismissal.  *See Wilkins v. Gaddy, supra*, 559 U.S. at 38.  *See also Comeaux v. Sutton,* 496 Fed. Appx. 368, 371 (5th Cir. 2012) (noting that the plaintiff's minimal injuries, described as "a bruised lip" and "two superficial scrapes," did not relieve the defendants of liability for excessive force); *Brown v. Jones*, 471 Fed. Appx. 420 (5th Cir. 2012) (finding that the plaintiff's claim of injury, resulting

---

4. The defendants have produced documentation suggesting that only a single can of chemical irritant was utilized during the incident involving the plaintiff on December 24, 2011, and that the can weighed 4.0 (presumably ounces) prior to the incident and 1.8 (presumably ounces) afterward.  *See* Rec. Doc. 37-10.  The defendants have provided no evidence, however, that would allow the Court to determine, in any practical sense, what this purported quantity of 2.2 ounces of chemical irritant equates to in terms of duration of the application of irritant spray.

from being allegedly struck in the groin, was sufficient to overcome the defendants' motion for summary judgment). This is particularly true where, as here, accepting the plaintiff's sworn version of events as true, the plaintiff was within his cell and was offering no justification for the use of force against him. The plaintiff was seen by a medical officer on the date of the confrontation, and he also asserts that he experienced discomfort for several days thereafter. On this showing, summary judgment should be denied relative to the plaintiff's claim of excessive force.[5]

In contrast to the foregoing, the Court finds that the defendants are entitled to qualified immunity in connection with the plaintiff's claim that, after the referenced incident, the defendants compelled him to take a shower in water that was too hot. This claim implicates the plaintiff's Eighth Amendment constitutional right to be free from cruel and unusual punishment in the form of exposure to unconstitutional conditions of confinement. In this regard, however, it is well-settled that the United States Constitution imposes upon prison officials only minimal requirements in the treatment and facilities which they provide to prisoners. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("The Constitution ... 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation" (citations omitted)).

---

5. The defendants assert that neither James Morris nor Shelton Scales were on the cell tier at the time of the incidents complained of and that they arrived on the tier after the events had transpired. This contention is disputed by the plaintiff, and he has provided both his own sworn statement and those of several co-inmate witnesses which assert that defendants Morris and Scales were present and participated in the events described in the Complaint. In addition, the Court notes that the tier logbook, a copy of which is provided as part of the plaintiff's administrative remedy proceedings, is ambiguous regarding the presence of defendants Morris and Scales. Specifically there is a single logbook entry for 12:44 p.m. on the pertinent date which includes both a reference to the incident complained of and a reference to defendants Morris and Scales being present, with no indication that these defendants arrived on the tier after the incident. *See* Rec. Doc. 37-3 at p. 19.

Accordingly, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition be sufficiently serious, depriving a prisoner of "the minimal civilized measure of life's necessities," or denying the prisoner some "basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter, supra*. Second, under a subjective standard, the Court must find that the prison official responsible for the deprivation was "'deliberately indifferent' to inmate health or safety." *Wilson v. Seiter, supra*, 501 U.S. at 303. *See also Farmer v. Brennan*, 511 U.S. 825, 834 (1970). Mere negligence is not a sufficient basis for liability under § 1983. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). Instead, a prison official must have been both personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also have drawn the inference in fact. *Farmer v. Brennan, supra,* 511 U.S. at 837. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995); *Wilson v. Seiter, supra,* 501 U.S. at 303.

Applying the foregoing standard, although the plaintiff makes a conclusory assertion that the water in the shower cell was too hot, the defendants have produced evidence reflecting that the temperature of the water supplied to the tier showers at LSP is generally maintained at a constant temperature and that "water temperatures in each unit are monitored on a daily basis." *See* Affidavit of Major Barrett L. Boeker, Rec. Doc. 37-7. The defendants have also produced a certified copy of the Air & Water Temperature Log for the plaintiff's housing unit on the date of the incident, December 24, 2011, and this document reflects that the temperature of the water supplied to the unit was tested and determined to be 104 degrees Fahrenheit on that date, which

is neither scalding nor unreasonably hot.  Finally, the medical record generated after the referenced incident reflects that the plaintiff made no complaint at that time regarding having been compelled to shower in water that was too hot, and there were no noted objective findings consistent with exposure to excessively hot water.  Accordingly, on this showing, the Court is unable to conclude that the defendants, by compelling the plaintiff take a shower after he was subjected to applications of a chemical irritant, were deliberately indifferent to a perceived substantial risk of serious harm to the plaintiff's health or safety which they ignored.  Summary judgment, therefore, is appropriate in connection with this claim.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, considering the allegations of the plaintiff's Complaint and the recommendation of the Court that all of the plaintiff's claims be dismissed except his claim pertaining to the alleged use of excessive force, the Court recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motion for Summary Judgment (Rec. Doc. 37) be granted in part, dismissing the plaintiff's claims asserted against the defendants in their official capacities and dismissing the plaintiff's claim that he was compelled to take a

shower in water that was too hot.  It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings in connection with the plaintiff's claim that defendants Sanders and Morris utilized excessive force against him on December 24, 2011, and that defendants Francois and Scales stood by and failed to intervene to prevent the alleged use of excessive force.

      Signed in Baton Rouge, Louisiana, on November 27, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**